UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| GARY C. GORDON and FINLEY MARK PARTON, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 6: 05-367-DCR ) ) |
| V. | ) ) |
| MINNESOTA MINING AND MANUFACTURING CO., et al., | ) **MEMORANDUM OPINION** ) **AND ORDER** ) ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Plaintiffs' motion to remand this matter to state court [Record No. 7], 3M Company, f/k/a Minnesota Mining and Manufacturing Company's ("3M"), motion for remand-related discovery [Record No. 9], 3M's motion for leave to file a surreply [Record No. 21], American Optical Corporation's ("American Optical") motion to sever [Record No. 22], Persinger Supply Company's ("Persinger") motion to sever [Record No. 34], and 3M's motion to join the motion to sever [Record No. 38].

For the reasons discussed herein, the Court will grant American Optical's motion to sever [Record No. 22], grant Persinger's motion to sever [Record No. 34], grant 3M's motion to join [Record No. 38], grant the Plaintiffs' motion to remand [Record No. 7], deny 3M's motion for remand-related discovery [Record No. 9], and deny as moot 3M's motion for leave to file a surreply [Record No. 21].

-1-

I.     BACKGROUND

The Plaintiffs in this case are former coal miners who allegedly suffer from black lung disease. They worked in coal mines in Kentucky and used various respirators designed to reduce harmful coal dust from entering their lungs. The respirators were manufactured by one of the three "manufacturing" defendants in this case, *i.e.*, 3M, American Optical, and Moldex-Metric, Inc. The Plaintiffs claim that the respirators were defective, causing coal dust to enter their lungs. They assert that this defect led to their contracting black lung disease.

The Plaintiffs have also sued the suppliers of the respirators. Six of the suppliers are non-diverse Defendants from Kentucky. These Defendants include: Mine Service Company, Inc. ("MSC"), Kentucky Mine Supply Company ("KMSC"), Mountain Supply Company, Marco Mine Supply, Inc., Valley Mine Supply Company, and Eastco Supply Co., Inc. Two of the suppliers (Persinger Supply Company and Morgantown-National Supply, Inc.) are diverse from the Plaintiffs.

The Plaintiffs argue that the Court should grant their motion to remand and deny the remaining motions, including the Defendants' motion to sever. Specifically, they assert that the Court lacks subject matter jurisdiction because there is not complete diversity of citizenship based on the claims they have asserted against the non-diverse Defendants. Conversely, the Defendants argue that the Court has subject matter jurisdiction. First, they assert that the Kentucky suppliers were fraudulently joined. Second, they contend that the Plaintiffs' claims have been fraudulently included in one action because not all of the Plaintiffs' claims share the requisite commonality to be joined under Rule 20(a). Thus, the Defendants argue that the claims

should be severed into individual actions with the Court retaining jurisdiction over any severed claims that meet the requirements for diversity jurisdiction.

Alternatively, the Defendants request a limited amount of time to conduct remand-related discovery regarding whether the Plaintiffs were provided masks by the Kentucky Defendants and, therefore, whether they have a link between their alleged injuries and the Kentucky Defendants. In response, the Plaintiffs argue that discovery on this issue is unnecessary inasmuch as the discovery obtained in related cases confirms that two of the Kentucky suppliers, (MSC and KMSC) provided respirators to two of their former employers. Relying on the discovery from these related cases, the Plaintiffs assert that they have established colorable claims against MSC and KMSC. Thus, the Court must remand the instant action for lack of subject matter jurisdiction. Likewise, the Plaintiffs contend that the Court should deny the remaining motions.

The Kentucky Defendants (MSC and KMSC) were not involved in manufacturing the masks but were simply retailers who sold masks from certain manufacturing defendants. MSC and KMSC were incorporated in Kentucky and have their principal place of business in Kentucky. Thus, if proper parties, their presence would defeat diversity jurisdiction because the Plaintiffs are Kentucky citizens for diversity purposes. However, pursuant to the fraudulent joinder doctrine, the Court must *first* determine whether the Plaintiffs' claims have been misjoined. If so, the Court may exercise jurisdiction over the action, sever the Plaintiffs' claims and remand those claims over which the Court does not have jurisdiction.

Because the Court concludes that the requirements of Rule 20(a) have not been met, it will grant American Optical's motion to sever. Further, having reviewed the discovery obtained in these related cases, it does appear that this information is sufficient to establish that the Plaintiffs have colorable claims against MSC and KMSC. Therefore, the Court finds that it is unnecessary to allow the parties to conduct remand-related discovery.

Next, because the Plaintiffs have established that they have colorable claims against two non-diverse Defendants, the Court will grant the Plaintiffs' motion to remand. Although it does not appear that the Plaintiffs have viable claims against the remaining non-diverse Defendants, (*i.e.*, Mountain Supply Company, Marco Mine Supply, Valley Mine Supply Company and Eastco Supply Co., Inc.), the fact that the Plaintiffs have colorable claims against some non-diverse Defendants warrants remand.[1]

## II.     LEGAL ANALYSIS

### A.     *Motion to Sever*

Under Rule 21 of the Federal Rules of Civil Procedure, American Optical claims that the Plaintiffs do not share sufficient commonality to qualify for joinder of claims pursuant to Rule 20(a). Thus, the Defendants argue that the Plaintiffs have engaged in "misjoinder." *In re: Rezulin Prods. Liability Litig.*, (hereafter "*Rezulin II*") 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001). Misjoinder occurs when plaintiffs, some with claims against a diverse party and some without, join together in one action to defeat diversity jurisdiction, even though their claims do

---

[1] Although it does not *appear* that the Plaintiffs have a valid claim against the remaining non-diverse Defendants from Kentucky, *i.e.*, Mountain Supply Company, Marco Mine Supply, Valley Mine Supply Company and Eastco Supply Co., Inc. or the two diverse supplier Defendants, Persinger and Morgantown-National, the Court finds that these issues should be addressed by the state court upon remand.

not satisfy Rule 20(a)'s requirements for permissive joinder. Misjoinder should not be confused with fraudulent joinder, discussed *infra*, in which the defendants claim that the plaintiff has made allegations against a defendant simply to defeat diversity jurisdiction, without a legal or factual basis to proceed against the non-diverse defendant.

Rule 20(a) of the Federal Rules of Civil Procedure is similar to Kentucky Rule of Civil Procedure 20.01 and provides in relevant part that:

> **(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. . . .

Rule 20 (a), Fed. R. Civ. P. As commentators have observed, this rule emphasizes "pragmatism" with joinder being based on common sense, fact-based considerations – not upon arcane historic formulations. 4 *Moore's Federal Practice,* § 20.02[1][a] (Matthew Bender 3d ed. 2004).

The rule serves several related purposes. First, it is intended to promote efficiency because all interested parties may be joined in a single proceeding, thereby encouraging a comprehensive resolution of the dispute. Second, because all interested parties are bound by a single judgment, inconsistent outcomes are avoided. *Id.*; *see also Ohio ex rel., Fisher v. Louis Trauth Dairy*, 856 F. Supp. 1229, 1239 (S.D. Ohio 1994) (permissive joinder promotes judicial economy by making final determination of all claims in a single action). Further, in an effort to achieve these goals, the permissive joinder rule is to be liberally construed. *Independent Liberty Life Ins. Co. v. Fiduciary and Gen. Corp.*, 91 F.R.D. 535, 537-38 (W.D. Mich. 1981). Notwithstanding the liberal rules of construction, it is clear that both requirements contained in

the rule – transactional relatedness and commonality – are required. 4 *Moore's Fed. Practice*, *supra*, at 20-19, 20-20; *see also Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 682 (6th Cir. 1988). In addition, courts evaluate joinder and severance on a case-by-case basis, taking into account such considerations as efficiency, convenience, consistency, and fundamental fairness. *Insolia v. Philip Morris, Inc.*, 186 F.R.D. 547, 549 (W.D. Wis. 1999). The trial court has significant discretion in determining whether to join or sever claims. *Id*. at 548-49.

In this case, the Plaintiffs claim that the Court should simply remand this matter and allow the state court to consider the issue of severance. As the undersigned has noted in other related litigation, this Court has a duty to rule on matters properly before it. As American Optical notes, the issue of joinder is independent of the issue of remand. If the Plaintiffs' claims should be severed, such a decision could impact which claims are remanded. Thus, the Court will consider American Optical's motion to sever the claims before ruling on the motion to remand. *See In re: Benjamin Moore and Co.*, 309 F.3d 296 (5th Cir. 2002) (in a case in which not all plaintiffs had claims against non-diverse defendant, appellate court ordered district court to determine, before ruling on motion to remand, whether plaintiffs' claims were different enough to warrant severance); *Bay Tobacco, LLC v. Bell Quality Tobacco Prod's, LLC*, 261 F. Supp. 2d 483, 490 (E.D. Va. 2003) (after removal to federal court, district court severed diversity-defeating plaintiff as a misjoined plaintiff pursuant to Rules 20 and 21 and thus denied motion to remand); *Rezulin II*, 168 F. Supp. 2d 136 (severing claims of misjoined parties, remanding those that were not diverse and retaining jurisdiction over claims of diverse plaintiffs); *but see Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal.

2004) (noting that other federal courts have considered misjoinder before considering remand and stating that "[m]y own judgment is that the last thing the federal courts need is more procedural complexity. I thus conclude that the better rule would require Met Life to resolve the claimed misjoinder in state court, and then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court.")

The Court is not persuaded by the Plaintiffs' citation in their supplemental memorandum to a five-line order filed by a Magistrate Judge in the Western District of Kentucky which indicated that the Court was holding a similar motion to sever in abeyance pending a ruling on the motion to remand. This brief order does not provide any insight to the Court, nor is it binding. The Court is more persuaded by the numerous published decisions discussed *supra* which have found that district courts should consider severing mis-joined claims prior to considering remand, given that it would be unfair for plaintiffs to mis-join parties in state court and then, following remand, have the plaintiffs prevent a federal court from considering a claim of misjoinder by arguing that the federal court lacked jurisdiction to hear the argument.

There are two requirements for establishing joinder of claims pursuant to Rule 20(a): (1) there must be a common question of law or fact, and (2) the case must arise out of the same transaction, occurrence, or series of transactions or occurrences. *James v. Gilmore*, 389 U.S. 572 (1968). The most troubling aspect of joinder in this case is the second requirement, *i.e.*, transactional relatedness. While the concept of transactional relatedness is flexible, in determining whether this element has been established, the ultimate determination is whether there are enough factual occurrences to ensure that joinder is fair. *Hall v. E. I. Du Pont De*

*Nemours & Co.*, 345 F. Supp. 353, 381 (E.D.N.Y. 1972); *see also Abdullah v. Acands, Inc.*, 30 F.3d 264, 269 n.5 (1st Cir. 1994) (joinder rejected in action by sailors alleging asbestos exposure but not alleging that plaintiffs served on same vessel during same time period, or were exposed by same machinery); *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (in action alleging breach of warranty regarding automobiles, fact that plaintiffs alleged similar problems did not mean that the claims were transactionally related). Indeed, "[m]ere factual similarity is not sufficient to compel joinder." *McCormick v. Mays*, 124 F.R.D. 164, 167 (S.D. Ohio 1988).

American Optical has cited several cases holding that joinder is improper when different manufacturers and distributors are involved and the only similarity between the plaintiffs' claims is that the plaintiffs were injured by the same generic product. *Rezulin II*, 168 F. Supp. 2d 136; *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638 (D. Nev. 2001); *Insolia*, 186 F.R.D. 547. The *Graziose* Court dealt with a claim brought by various plaintiffs against numerous distributors and manufacturers of medications that contained phenylpropanolamine, a supposedly harmful substance. In refusing to allow the joinder of the plaintiffs in the same action, the district court noted that:

> [t]he purchases/ingestions of the medications in question clearly did not arise out of the same transaction or a series of transactions. They occurred at different times. The medicines were different. The retailers were different. The manufacturers are different. The questions of law and fact involved in each claim is also different. The damages involve different people with different sets of facts. The purchases, the use, the need, the motivation, the knowledge of the parties, the alleged reliance, apparently the exact nature of the injuries or damages, the potential for contributing factors . . . are all questions peculiar to each claim.

*Graziose*, 202 F.R.D. at 640. Similarly, in *Rezulin II*, the court noted that:

> [t]he plaintiffs . . . allege a defect (or defects) the precise contours of which are unknown and which may have caused different results -- not merely different injuries -- in patients depending on such variables as exposure to the drug, the patient's physical state at the time of taking the drug, and a host of other known and unknown factors that must be considered at trial with respect to each individual plaintiff. They do not allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time. . . . [T]hey do not allege injuries specific to each of them so as to allow the Court to determine how many plaintiffs, if any, share injuries in common. Joinder "of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims."

*Rezulin II*, 168 F. Supp. 2d at 146 (citation omitted). Here, the contours of each Plaintiffs' claim will vary depending upon such factors as: the type of mask used and the identity of the manufacturer, the length of use of the mask, the mine in which the mask was used, the physical ailments attributable to the mask, and the identity of the retailer.

To counter these authorities, the Plaintiffs cite *In re Norplant Contraceptive Prods.*, 168 F.R.D. 579, 581 (E.D. Tex. 1996). In *Norplant*, a group of plaintiffs sued the manufacturers of Norplant, a surgically inserted form of the birth-control drug progestin, as well as the doctors who inserted Norplant into their arms. The Defendants sought to sever the plaintiffs claims into groups based upon the identity of the doctor who installed the contraceptive. The district court, however, held that common facts and questions of law pervaded, including whether Norplant was harmful. *Id*. As the Defendants point out, *Norplant* involved a single manufacturer and a single product, unlike the present case.

The Court agrees with the holdings in *Rezulin II*, *Graziose*, and *Insolia*: a generic claim against various manufacturers is not necessarily sufficient to find that the plaintiffs' claims arose out of the same "transactions or occurrences" when the plaintiffs make claims against various

retailers and manufacturers. In this case, the manufacturers of the masks were different, the retailers were different, the plaintiffs used different masks for varying periods of time and suffered varying degrees of harm, and the safety information conveyed by each company and received by each plaintiff is likely different. Further, the claims brought against the retailers are entirely different from the claims brought against the manufacturers, involving different legal theories and different types of proof. The assurances provided by the retailers is likely different, as is the amount of information the retailers had about their products.

In short, the Court cannot conclude that each plaintiffs' claimed injury allegedly arose from the same transaction or occurrence as the other. As discussed *supra*, the facts of each Plaintiffs' case will turn on numerous independent variables. The Plaintiffs claim that judicial economy would be harmed by severing any of their claims. It should be noted, however, that "[j]oinder of . . . plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of asserted claims." *Rezulin II*, 168 F. Supp. 2d at 146. Additionally, the Court must also bear in mind a foreign defendant's right to remove a case, properly subject to federal jurisdiction, to avoid local bias. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158-59 (6th Cir. 1993). Weighing all of these factors, the Court believes that severance is appropriate.

Finally, the Plaintiffs claim that this Court should not find misjoinder because there is no proof of fraud or "egregious conduct," citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996). The *Tapscott* case is credited with first having established the "fraudulent misjoinder" theory. 14B Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 3723 (3d ed. 1998). The *Tapscott* Court noted that it did "not hold that mere misjoinder is fraudulent joinder," instead holding misjoinder coupled with "egregious conduct" constitutes fraudulent misjoinder. *Tapscott*, 77 F.3d at 1360. Relying on this language, the Plaintiffs claim that they have not acted fraudulently or egregiously and thus claim that there is no evidence of fraudulent joinder. Regardless of whether the record demonstrates bad faith on the part of the Plaintiffs, this Court agrees with the *Rezulin* and *Bay Tobacco* Courts which did not require a finding of egregious conduct in order to sever the unrelated claims. *See Rezulin*, 168 F. Supp. 2d at 147-48 (finding it unnecessary to apply *Tapscott*'s "egregious conduct" requirement).

The only common factual allegation in the Plaintiffs' claims is the allegation that each used the same kind of product or products in the same kind of work. This is not a sufficient basis for a Kentucky state court to find that the Plaintiffs' claims arise out of the same transaction or series of transactions. Accordingly, the Court finds that the Plaintiffs' claims are misjoined and that there is not arguably a reasonable basis for finding that the Plaintiffs' claims were properly joined. While further severance may be necessary, based both upon the manufacturers' and the retailers' relationships with the individual Plaintiffs, such additional severance can be taken up by the state court at a later date.[2] At this point, however, it is only necessary for this Court to further determine whether the each of the Plaintiffs have claims against the Kentucky Defendants, in order to resolve the remand issue with respect to each Plaintiff that is properly before the Court.

---

[2] Any future severance could be based upon either Rule 20(a) or Rule 20(b).

### B.      Motion to Remand & Fraudulent Joinder

The burden of establishing jurisdiction is upon the defendant as the removing party. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993); *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir. 1989). In *Coyne v. The Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999), the Sixth Circuit explained the relevant considerations in analyzing a claim of fraudulent joinder, noting that:

> the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, this Court must remand the action to state court. The district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand.

It should be further noted that:

> [t]his court has a responsibility to accept jurisdiction in all proper cases. [However,] [i]t has a greater obligation to protect the jurisdiction of the State court, both by reason of comity to that court and fairness to litigants who have chosen it as a forum. Where there is doubt as to federal jurisdiction, the doubt should be construed in favor of remanding the case to the State court where there is no doubt as to its jurisdiction.

*Walsh v. Am. Airlines, Inc.*, 264 F. Supp. 514, 515 (E.D. Ky. 1967). Thus, this Court must remand the case if there is any doubt regarding this Court's ability to retain jurisdiction.

Relying on the Court's recent decision in *Carlos Adams, et al. v. Minnesota Mining and Manufacturing, et al.,* No. 6: 04-521-DCR (E.D. Ky. January 31, 2005), American Optical argues that the Court should permit the parties to conduct limited discovery to determine whether the Plaintiffs' employers are linked to one or more of the Kentucky suppliers. In *Carlos Adams* the Court determined that Plaintiffs' complaint did not sufficiently identify the causal link

between each Plaintiffs' injury and the Kentucky Defendants. Thus, the Court allowed the parties a limited amount of time in which to take discovery on this issue. In doing so, the Court concluded that such discovery would be helpful in resolving the remand issue by establishing the particular Defendants against which the Plaintiffs had a colorable claim.

In the instant case, however, the Court agrees with the Plaintiffs that remand-related discovery is not necessary based on the fact that the information obtained in *Carlos Adams* and *Foister Asher, Jr., et al. v. Mine Service Company, Inc.*, No. 04-522-KKC establishes that the Plaintiffs have colorable claims against Kentucky Defendants MSC and KMSC. Particularly, the Plaintiffs note that the discovery materials obtained in *Carols Adams* and *Foister* cases establish that two of Plaintiff Gordon's former employers (Eastover Mining and Gatliff Coal/TECO Coal) and two of Plaintiff Parton's former employers (Parton Coal and Gatliff Coal/TECO Coal) were customers of MSC and KMSC. That is, MSC and KMSC sold respiratory protection products to Plaintiffs' former employers. The Plaintiffs argue that the evidence linking their previous employers with these Kentucky Defendants is sufficient to show that they have a colorable claim against these non-diverse Defendants and that remand is proper. This Court agrees.

The Defendants, however, assert that the Kentucky Middleman Statute, K.R.S. § 411.340, forecloses any liability against the Kentucky Defendants. That statute provides that:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely

> from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

K.R.S. § 411.340.  The Defendants claim that the respirators and dust masks were sold in their original condition, thus precluding liability for the Kentucky Defendants.

The Defendants also point out that the Plaintiffs have not established how the retailers should have known of the alleged defects in the masks.  The Defendants argue that retailer has no duty to "test of seek out scientific information regarding the products" they sell.  Therefore, they claim that they cannot be liable under the "should have known" exception to the middleman statute.  However, inasmuch as discovery has not yet commenced, it is difficult for the Plaintiffs to demonstrate what knowledge, if any, the retailers had of the defectiveness of the masks. (Under Rule 11 of the Federal Rule of Civil Procedure, the Plaintiffs' counsel should have *some* information or evidence to support this claim.)  It would be improper to remove the retailers as Defendants at this early stage of the proceedings merely because one retailer claims that he was unaware of the dangers of the masks.

In addition, the Court notes that it has reviewed opinions from two district judges within this state which have concluded that the Kentucky Middleman Statute does not render the distributors and retailers of the allegedly defective respirators "fraudulent" parties to the plaintiffs' suits.  *Baker v. Minnesota Mining and Manufacturing Co.*, No. 6: 03-470-KKC (E.D. Ky. May 26, 2004); *Adams v. Minnesota Mining and Manufacturing Co.*, No. 4: 03-182-M (W.D. Ky. March 30, 2004).  Judge Caldwell's opinion, in fact, involved one of the same "fraudulent" parties: MSC.  In that opinion, Judge Caldwell noted,

> [t]he only evidence produced by American Optical on this issue is an affidavit from Mine Service's president who states that, contrary to the allegations in the Complaints, Mine Service "had no reason to know at the time of the sale of each of the masks/respirator products of any alleged defects" in the products. This Court cannot determine that a distributor had no reason to know about a product's defects based solely on a conclusory statement made by the defendant distributor to that effect.

[6: 03-470-KKC, Record No. 63, p. 7]

Thus, as this Court held in *Baker v. Minnesota Mining and Manufacturing Co.*, No. 6: 03-470-KKC (E.D. Ky. May 26, 2004) and as the District Court for the Western District of Kentucky held in *Adams v. Minnesota Mining and Manufacturing Co.*, No. 4: 03-182-M (W.D. Ky. March 30, 2004), the undersigned concludes that there is a colorable basis for predicting that those Plaintiffs whose masks came from the Kentucky Defendants *may* ultimately prevail against the Kentucky retailers. This conclusion is further bolstered by the fact that all doubts are "resolved in favor of remand." *Coyne*, 183 F.3d at 493.

### III.  CONCLUSION

For the reasons discussed herein, it is **ORDERED** as follows:

(1) American Optical Corporation's Motion to Sever [Record No. 22] is **GRANTED**.

(2) Persinger Supply Company's Motion to Sever [Record No. 34] is **GRANTED**.

(3) Minnesota Mining and Manufacturing Company's Motion to Join the Motion to Sever [Record No. 38] is **GRANTED**.

(4) The Plaintiffs' Motion to Remand [Record No. 8] is **GRANTED.**

(5) Minnesota Mining and Manufacturing Company's ("3M") motion for remand-related discovery [Record No. 9] is **DENIED**.

(6)     Minnesota Mining and Manufacturing Company's Motion for Leave to File a Surreply [Record No. 21] is **DENIED** as moot.

(7)     The claims of Gary Gordon and Finley Mark Parton are **SEVERED** and **REMANDED** to the Bell Circuit Court as two separate actions.

This 13th day of October, 2005.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge